IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-24-00170-JD |
| ) | |
| DESTINY PYLES, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant Destiny Pyles' Motion to Revoke Order of Detention ("Motion") [Doc. No. 21]. Pursuant to 18 U.S.C. § 3145(b), Ms. Pyles asks the Court to revoke the Order of Detention Pending Trial ("Order of Detention") [Doc. No. 12] entered by United States Magistrate Judge Shon T. Erwin on April 26, 2024. The United States filed a response in opposition ("Response") [Doc. No. 25]. For the reasons stated below, the Court denies the Motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On April 16, 2024, the grand jury returned an Indictment against Ms. Pyles, charging her with distribution of fentanyl resulting in death, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). [Doc. No. 1]. Ms. Pyles was arraigned on the charge on April 23, 2024, and entered a plea of not guilty. [Doc. No. 5]. Her jury trial was set for June 11, 2024. *See id.* The United States moved for detention based on risk of flight and danger to the community, and a detention hearing was set for April 26, 2024. *See id.* Ms. Pyles was ordered temporarily detained pending the detention hearing. [Doc. No. 6].

Prior to Ms. Pyles' detention hearing, the United States Probation Office ("USPO") prepared a Pretrial Services Report and recommended release with special conditions. [Doc. No. 10 at 9]. At the detention hearing, the United States presented the testimony of Drug Enforcement Administration ("DEA") Special Agent Robin Melodick and a brief proffer. [Doc. No. 11]. Counsel for Ms. Pyles also proffered evidence. *See id.*

The single charge invoked the rebuttable presumption in 18 U.S.C. § 3142(e)(3)(A), and Judge Erwin determined that there was probable cause Ms. Pyles committed the offense of distribution of fentanyl resulting in death. Judge Erwin also concluded that Ms. Pyles had presented sufficient evidence to successfully rebut the presumption as to a risk of nonappearance and as to safety to the community. [Doc. No. 12]. Nonetheless, he detained Ms. Pyles on the basis that the United States had established, by a preponderance of the evidence, that no condition or combination of conditions of release would reasonably assure her appearance. *See id.* In addition to the findings made on the record at the hearing, Judge Erwin checked "weight of evidence against the defendant is strong" and "subject to lengthy period of incarceration if convicted" in the Order of Detention as reasons for detaining Ms. Pyles. *See id.*

In deciding whether the government had met its burden of proving that no condition or combination of conditions would reasonably assure Ms. Pyles' appearance and the safety of the community, Judge Erwin considered the factors under 18 U.S.C. § 3142(g). In particular, he noted that the nature and circumstances of the offense charged were very serious and that the rebuttable presumption applied. He noted that the court rarely sees an offense where the punishment range starts at 20 years' imprisonment and

has a statutory maximum of life imprisonment. Additionally, he noted that the offense charged involved a death and a controlled substance.

Although Judge Erwin concluded the rebuttable presumption applied, he found it had been successfully rebutted by the defense. As to serious risk of non-appearance, Judge Erwin found that the Pretrial Services Report [Doc. No. 10] successfully rebutted the presumption given Ms. Pyles has no prior convictions or failures to appear. He also indicated the evidence supported that Ms. Pyles was a very engaged mother and concerned for the welfare of her four young children. As to safety of the community, Judge Erwin concluded that the defense had successfully rebutted the presumption because Ms. Pyles has no prior violent criminal history. He noted that although the defense had successfully rebutted the presumption as to both prongs, the rebuttable presumption does not go away, but remains to remind the court of the serious offense charged.

Judge Erwin indicated that the weight of the evidence stood out to him as very heavy given Ms. Pyles had confessed to distribution of fentanyl resulting in death in a videotaped, post-*Miranda* interview following her arrest on the charge. Additionally, he explained that he had grave concerns about Ms. Pyles' mental health given her suicide attempt in February 2024, only a few months ago, where she put a gun to her chest and pulled the trigger. Although Judge Erwin ultimately concluded the government had not met its burden by clear and convincing evidence that Ms. Pyles was a danger to the community, Judge Erwin did find that the government had proven by a preponderance a serious risk of non-appearance. Judge Erwin stated he believed Ms. Pyles' suicide

attempt was genuine, noted that she faces a lengthy prison term if convicted, and opined that this would weigh heavily on her mental health. Finally, Judge Erwin noted that the rebuttable presumption is still a factor to consider, and he concluded that no conditions of release would reasonably assure Ms. Pyles' appearance at future court proceedings, and he ordered her detained based on her risk of non-appearance.

When defense counsel inquired of Judge Erwin whether he had considered the conditions listed in § 3142(c) in arriving at his conclusion, Judge Erwin stated he had and that he had specifically considered a mental health treatment condition and use of an ankle monitor for supervision. However, Judge Erwin noted his chief concern was Ms. Pyles' mental health, and he found her to be a severe suicide risk having attempted suicide within the last couple of months. He concluded those conditions would not sufficiently mitigate the risk.

On May 23, 2024, Ms. Pyles, through counsel, filed an unopposed motion to continue the jury trial and to extend the pretrial motion deadlines [Doc. No. 20]. The Court granted the unopposed motion and continued the jury trial in this matter to the Court's July 9, 2024, trailing jury trial docket. [Doc. No. 23].

In the instant Motion, Ms. Pyles asks the Court to revoke Judge Erwin's Order of Detention, asserting that he focused only "on the prior suicide attempt in 2024 and how that weighed on non-appearance." Motion at 8. Ms. Pyles asserts that there were no other factors to support the finding that she was a flight risk. *See id.* Additionally, she asserts that she received mental health treatment following the suicide attempt and was prescribed medication for depression and has not had similar thoughts since. *See id.*

In response, the government contends that Ms. Pyles did not present credible evidence to rebut the presumption, and that even if she had, the government "provided ample evidence to satisfy its burden to show that there are no conditions or combination of conditions that will reasonably assure her appearance and the safety of the community." Response at 4. The government maintains that the § 3142(g) factors weigh in favor of Ms. Pyles' detention. *See id.* at 6–10.

## II.     STANDARD OF REVIEW

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Within that carefully limited exception, the Bail Reform Act authorizes pretrial detention of a defendant after a hearing held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government bears the burden of proving risk of flight by a preponderance of the evidence and dangerousness by clear and convincing evidence. *See id.* § 3142(f); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). The rules of evidence do not apply at the hearing. *See* 18 U.S.C. § 3142(f). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer must consider the statutory factors set forth in § 3142(g). *See id.* § 3142(g).

When a defendant is charged with certain crimes, however, a presumption arises that the defendant is a flight risk and a danger to the community. *See id.* § 3142(e)(3).

Under § 3142(e)(3)(A), a presumption of detention arises when "there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.) . . . ." 18 U.S.C. § 3142(e)(3)(A). The Tenth Circuit has explained that "the grand jury indictment of defendant [is] sufficient to establish a finding of probable cause that [the defendant] ha[s] committed a federal drug offense carrying a maximum prison term of ten years or more." *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991). "Once the presumption is invoked, the burden of production shifts to the defendant." *Id.* at 1354. The burden of persuasion remains with the government. *See id.* at 1354–55. A defendant's burden "is not heavy, but some evidence must be produced." *See id.* at 1355. Even if a defendant meets his burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain." *See id.* (citing *United States v. Cook*, 880 F.2d 1158, 1162 (10th Cir. 1989)).

Section 3145(b) allows a "court having original jurisdiction over the offense" to review a magistrate judge's detention order. *See* 18 U.S.C. § 3145(b). "A district court conducts a de novo review of a magistrate judge's detention order, *Cisneros*, 328 F.3d at 616 n.1, but there is no statutory requirement that the court hold a hearing, *see* 18 U.S.C. § 3145(b)." *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019) (unpublished). Rather, the decision to hold a hearing is discretionary. *See id.* (citing *Cisneros*, 328 F.3d at 617 ("[The district court] also held [its] own hearing to consider new evidence from the parties, as was [its] prerogative.")); *see also United States v. Rudolph*, 582 F. Supp.

6

3d 804, 808 (D. Colo. 2022) ("*De novo* review . . . does not necessarily mean holding an evidentiary hearing. Although a district court may start from scratch and take evidence, it may also review the evidence that was before the magistrate judge and make its own independent determination . . . .") (citation omitted); *United States v. Daughtry*, Case No. 19-CR-0161-CVE, 2019 WL 4731949, at *2 (N.D. Okla. Sept. 27, 2019) ("A district court has the discretion to hold an evidentiary hearing if it determines that additional evidence is necessary, or it may rule on the written pleadings and evidence if the factual record is sufficient.") (citing *United States v. King*, 849 F.2d 485, 490–91 (11th Cir. 1988); *United States v. Williams*, 753 F.2d 329, 334 (4th Cir. 1985)).

The Court has listened to the FTR recording of the detention hearing in its entirety and has reviewed the Motion, Response, and the other filings of record in this case, including the Pretrial Services Report. Based on its review, the Court determines that a sufficient factual record exists and, therefore, an additional evidentiary hearing is unnecessary.[1]

---

[1] Under § 3142(f), a judicial officer may reopen a detention hearing and reconsider a detention order. The Tenth Circuit has explained that § 3142(f) "applies to reconsideration of a detention or release order by the same judicial officer who entered the initial order." *Cisneros*, 328 F.3d at 614. Additionally, "reconsideration is permissible under this section only when there is new information that would materially influence the judgment about whether there are conditions of release which will reasonably assure that the defendant will not flee and will not harm any other person or the community." *See id.*; *see also* 18 U.S.C. § 3142(f) (a hearing may be reopened if the judicial officer finds that information exists that was not known to the movant at the time of the hearing, and it has a material bearing on the issue of release). Here, Ms. Pyles does not demonstrate that any new information exists that was not known to her at the time of the detention hearing, nor does she seek review by the same judicial officer under § 3142(f).

## III. DISCUSSION

### A. The Statutory Presumption of Detention

Judge Erwin concluded that Ms. Pyles had overcome the statutory presumption of detention, relying on the Pretrial Services Report and the evidence at the detention hearing. The government asserts that neither the Pretrial Services Report nor "evidence presented by Ms. Pyles amounts to credible evidence that she will abstain from selling deadly drugs." Response at 6. It further contends that Ms. Pyles' "short-term job that she has not seen in weeks and a friend who she can live with, do not provide any assurances that Ms. Pyles will not engage in the same conduct" that resulted in the instant charge. *See id.* The Court finds it unnecessary to determine whether Judge Erwin's finding as to the presumption was correct because, for the reasons set forth below, the Court finds the government has met its burden to show that there are no "conditions of release that will reasonably assure" Ms. Pyles' appearance." *See* 18 U.S.C. § 3142(g).

### B. Section 3142(g) Factors

#### *1) Nature and Circumstances of the Offense Charged*

The first § 3142(g) factor is "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance[.]" 18 U.S.C. § 3142(g)(1). The nature of the offense weighs in favor of detention. Ms. Pyles faces a mandatory minimum sentence of 20 years if convicted. The offense carries a statutory maximum of life in prison. Further, the offense charged involved a death and a controlled substance, i.e., fentanyl. Here, the seriousness of the crime charged, as well as the

8

potential minimum and maximum term of imprisonment weigh in favor of finding that Ms. Pyles is a flight risk.

2)      *Weight of the Evidence*

The second factor—"weight of the evidence against the person," 18 U.S.C. § 3142(g)(2)—also weighs in favor of detention here. The weight of the evidence coupled with the likelihood of a substantial sentence increases a defendant's incentive to flee. *See, e.g.*, *United States v. Nichols*, 897 F. Supp. 542, 547 (W.D. Okla. 1995) (noting that the great weight of the evidence and "[t]he prospect of a lengthy prison term . . . provides [the defendant] with a great incentive to flee"); *United States v. Holguin*, 791 F. Supp. 2d 1082, 1090 (D.N.M. 2011) (because the defendant faced charges carrying substantial sentences and the weight of the evidence was significant, the district court noted this gave the defendant "reason to flee" if she was released pending trial); *United States v. Baker*, 349 F. Supp. 3d 1113, 1132–33 (D.N.M. 2018) (noting that the severe sentence the defendant faced if convicted coupled with the weight of the evidence created "a strong incentive" for the defendant to flee if released before trial).

Ms. Pyles asserts that the weight of the evidence is just one factor, and that in this case "it is not an overwhelming factor because many drug trafficking cases involve strong evidence." Motion at 8. She also asserts that Judge Erwin focused on her statements admitting responsibility for the offense charged, and that "[i]t would be more troubling if [she had] denied and lied to law enforcement." *See id.* "[T]he plain language of § 3142(g) does not suggest that one factor matters more or less than another." *United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. 2021) (per curiam)

9

(unpublished) (explaining that application and weight of the relative importance of the statutory factors "requires an individualized determination that necessarily differs for each defendant depending on the circumstances of the case"). Here, the Court finds in weighing and applying all the § 3142(g) factors, and based on an individualized determination of Ms. Pyles and the facts and circumstances of this case, that the weight of the evidence against Ms. Pyles is significant.

According to Special Agent Melodick, the victim was found dead in his barracks on the Fort Sill Army Base in Lawton, Oklahoma, in September 2022. An autopsy was conducted of the victim, and the official cause of death was fentanyl toxicity. A search of the victim's cell phone disclosed that he and Ms. Pyles had communicated the day before he died about purchasing two pills for $50.00. Specifically, the conversation was about "blues," which Special Agent Melodick indicated in her experience referred to fake or counterfeit oxycodone M-30 pills containing fentanyl. The DEA's investigation confirmed that Ms. Pyles had received $50.00 in her Cash App account from the victim. Special Agent Melodick testified that $50.00 at that time was consistent with the price of "blues."

Special Agent Melodick also testified that the DEA learned through interviews with other soldiers who were friends of the victim that they were with the victim weeks before his death when he purchased pills from a female at an apartment complex in Lawton. The DEA confirmed that this was the same apartment complex where Ms. Pyles was residing at the time.

Based on this evidence and other evidence, the grand jury returned an Indictment against Ms. Pyles, resulting in her arrest. After her arrest, she agreed to participate in a post-*Miranda* interview, which was recorded (both video and audio). Agent Melodick watched excerpts of the interview, and she testified that in the interview Ms. Pyles identified the victim in a photograph and recalled selling him pills the day before his death. When Ms. Pyles was informed that the victim had died, she started crying hysterically and was visibly upset, according to Special Agent Melodick. Thus, in addition to cell phone records and eyewitness testimony, the evidence includes a videotaped, post-*Miranda* confession by Ms. Pyles.

### 3)     *History and Characteristics of Ms. Pyles*

On balance, the history and characteristics of Ms. Pyles weigh in favor of detention. *See* 18 U.S.C. § 3142(g)(3). Ms. Pyles has no prior convictions; she was employed prior to her arrest and can reportedly return to that employment, if released. Additionally, she has strong ties to Lawton, including her children. However, Ms. Pyles' recent attempt to take her own life in February by shooting herself in the chest is a very serious concern for the Court. The Court also agrees with Judge Erwin that a mental health treatment condition and location monitoring do not alleviate or sufficiently mitigate the very real risk that Ms. Pyles will attempt suicide again, particularly now that she knows the victim has died and she has been arrested and charged with a crime that carries a statutory minimum prison sentence of 20 years, if convicted.

### 4) *Nature and Seriousness of the Danger to Any Person or the Community*

The fourth factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As set forth above, Ms. Pyles is presumed to be a danger to the community because of the nature of her charge. *See id.* § 3142(e). Although this presumption is rebuttable, it remains in the case as a factor militating against release and is to be weighed with other evidence related to the § 3142(g) factors. If released, Ms. Pyles remains a very real danger to herself given her recent suicide attempt.

Judge Erwin concluded that the government did not meet its burden to show by clear and convincing evidence that Ms. Pyles presented a risk of danger to the community if released. The government asserts that Ms. Pyles' "engagement in deadly fentanyl trafficking demonstrates that she presents a significant risk of danger to the community if released." Response at 9. Citing to several cases, the government asserts that the threat of continued drug trafficking can constitute a danger to the community. Here, however there is no evidence of record of Ms. Pyles distributing or trafficking drugs outside of her two alleged transactions with the victim, which were almost two years ago, distinguishing this case from those cited by the government in its Response. Additionally, she expressed in her post-*Miranda* interview that she believed the pills she sold the victim were "Percs," meaning Percocet.

In summary, the government has shown by a preponderance of the evidence that Ms. Pyles would be a flight risk if released, but it has not met its burden by clear and convincing evidence that Ms. Pyles poses a danger to the community. Accordingly, upon

de novo review, the Court finds no grounds upon which to revoke Judge Erwin's Order of Detention.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendant Destiny Pyles' Motion to Revoke Order of Detention [Doc. No. 21]. Ms. Pyles will remain detained pending trial.

IT IS SO ORDERED this 7th day of June 2024.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE